[No. 9016-0-I.   Division One.   August 31, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. LEAH
H. SMITH, *Appellant*.

*Alan Corner,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *James Lobsenz, Deputy,* for respondent.

DURHAM, J.—A jury of six found appellant Leah Smith guilty of simple assault. In March 1979, Smith was employed as a counselor at Fircrest School, a state facility for the care of severely retarded people. She was accused of striking a resident named Sharon with an electric extension cord, causing injury to Sharon's legs.

The court heard evidence which fixed Sharon's I.Q. at 23 (100 normal), placing her in the severe range of retardation. She was 38 years old at trial, but was found to have a mental age of about 4 years. The psychologist evaluated Sharon's moral development at level one, meaning that she understood the existence of rules which she must follow.

Smith first assigns error to the trial court's finding that Sharon was competent to testify. After examination by counsel and the court, the court found as follows:

> THE COURT: The witness is clearly a competent witness within the standards . . . [which are] whether or not the witness understands the nature of an oath and whether the person is capable of giving a correct account of what has been seen and heard. It is clear that the witness qualifies on both those counts, . . .

Smith challenges this finding, relying upon CrR 6.12(c) which provides:

> The following persons are incompetent to testify: (1) Those who are of unsound mind, or intoxicated at the time of their production for examination; and (2) children who do not have the capacity of receiving just impressions of the facts about which they are examined

or who do not have the capacity of relating them truly.

■■ Smith first argues that Sharon was a "child" within the meaning of CrR 6.12(c)(2) because her mental age was 4 years, and her testimony during the competency hearing showed that she was an incompetent witness. We are unaware of any authority, and counsel has provided none, to support the proposition that a severely retarded adult should be considered a child for purposes of competency. Regardless of the merit of this proposition, however, there is clear authority that a witness is not automatically incompetent because of age. In *State v. Allen,* 70 Wn.2d 690, 424 P.2d 1021 (1967), the court upheld the admission into evidence of a 6–year–old victim's testimony. The court established the following requirements of competency, which apply to young children:

> (1) an understanding of the obligation to speak the truth on the witness stand; (2) the mental capacity at the time of the occurrence concerning which he is to testify, to receive an accurate impression of it; (3) a memory sufficient to retain an independent recollection of the occurrence; (4) the capacity to express in words his memory of the occurrence; and (5) the capacity to understand simple questions about it.

*Allen,* at 692. A thorough examination of the record reflects substantial evidence to support the trial court's finding that Sharon met the test enunciated above.

Smith next claims that Sharon's testimony should have been excluded because she was of "unsound mind" as set forth in CrR 6.12(c)(1). It is true that the rule merely refers to those of unsound mind, without setting forth any test by which to judge the degree of mental deficiency. Nonetheless, our Supreme Court has limited the definition of this term so that the rule makes only certain witnesses incompetent. In defining "unsound mind," the court has stated:

> [W]e think it must include those persons only who are commonly called insane; that is to say, those suffering from some derangement of the mind rendering them incapable of distinguishing right from wrong. . . . In other words, the statutory term refers to those who are

without comprehension at all, not to those whose comprehension is merely limited.

(Italics omitted.) *State v. Wyse,* 71 Wn.2d 434, 436, 429 P.2d 121 (1967), quoting *State v. Hardung,* 161 Wash. 379, 381, 297 P. 167 (1931). Thus, although of "unsound mind," a witness may possess sufficient comprehension regarding certain matters so as to be competent to testify as to them.

The test used by most courts to decide the competency of a witness afflicted with an "unsound mind," and precisely the one applied by the trial court here, was described by the United States Supreme Court nearly a century ago:

> The general rule, therefore, is, that a lunatic or a person affected with insanity is admissible as a witness if he have sufficient understanding to apprehend the obligation of an oath, and to be capable of giving a correct account of the matters which he has seen or heard in reference to the questions at issue; . . .

*District of Columbia v. Armes,* 107 U.S. 519, 521–22, 27 L. Ed. 618, 2 S. Ct. 840 (1882). *See also* Annot., 26 A.L.R. 1491 (1923); Annot., 148 A.L.R. 1140 (1944). RCW 5.60.050, upon which CrR 6.12(c) is based, has been held to be declaratory of the common law by our State Supreme Court and those of other jurisdictions having similar statutes. *State v. Moorison,* 43 Wn.2d 23, 259 P.2d 1105 (1953); *see* 81 Am. Jur. 2d *Witnesses* § 82 (1976); 5 R. Meisenholder, Wash. Prac. § 162 (1965). We conclude that the common law test is implicitly part of CrR 6.12(c)(1).

> Competency of witnesses involves
>
> matters that are not reflected in the written record for appellate review. Their determination lies within the sound discretion of the trial judge and will not be disturbed on appeal in the absence of proof of a manifest abuse of discretion. *State v. Ridley,* 61 Wn.2d 457, 378 P.2d 700 (1963), and authorities cited.

*Allen,* at 692. The trial court applied the proper test of competency by finding that Sharon, although severely retarded, was able to understand the obligation to tell the truth on the witness stand, and that she was able to relate the basic facts of the incident. The record contains a solid

basis for the court's determination of competency. Smith has shown no abuse of discretion.

Smith next assigns error to the admission into evidence of certain testimony. After the incident, Sharon told several Fircrest employees that Smith had hit her with an electrical extension cord. Smith contends that this testimony was inadmissible hearsay and that none of the hearsay exceptions apply. The State characterizes Sharon's statements to the employees as admissible prior consistent statements.

We agree with the State. ER 801(d)(1)(ii) reads, in part:

> **(d) Statements Which Are Not Hearsay.** A statement is not hearsay if—
> (1) *Prior Statement by Witness.* The declarant testifies at the trial or hearing and is subject to cross–examination concerning the statement, and the statement is . . . (ii) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, . . .

Sharon testified before the Fircrest employees took the stand, and she identified Smith as her assailant. During cross–examination, defense counsel asked questions designed to show that Sharon had previously falsely accused Smith of misdeeds and mistreatment. These questions charged Sharon with fabrication and bias against Smith. The testimony of the Fircrest employees was used to admit Sharon's prior consistent statements in rebuttal to the charge of fabrication. Such testimony is specifically defined as nonhearsay and is admissible under ER 801(d)(1)(ii).

Smith next claims that the trial court erred in denying her motion for a mistrial. During cross–examination of a defense witness, and prior to Smith taking the stand, the State elicited testimony concerning Smith's reputation for truthfulness. She argues that this was clearly improper and compromised her right to remain silent. The State admits that the jury should never have heard the testimony before Smith herself testified, but that the error was cured when

Smith did take the stand, as she always intended to.

■■ We again agree with the State. Although the testimony was improper before Smith testified, the error was cured later. Reputation evidence becomes admissible when a witness takes the stand. ER 608(a); *State v. Ternan,* 32 Wn.2d 584, 203 P.2d 342 (1949). After the reputation testimony was heard, defense counsel's objection and motion to strike were sustained. He then made his motion for a mistrial, to which the court responded:

THE COURT: On what grounds are you damaged? Do you intend to call your client as a witness?

[DEFENSE COUNSEL]: Yes, Your Honor. But I am not going to call any character witnesses that would testify as to her reputation for truth and veracity. I never had that in mind ever. I wouldn't have done so.

THE COURT: That testimony would be admissible if your client is a witness in the case and there would be no harm.

The question was improper. The question would not be proper until the person has been called as a witness in the case and the prosecutor should not have asked the question until after the person had testified, obviously.

But I don't see any damage. You intended to call your client and the evidence would then become admissible.

The court denied the motion for mistrial since there was no prejudice to Smith. A mistrial is inappropriate unless "the defendant has been so prejudiced that nothing short of a new trial can insure that defendant will be tried fairly." *State v. Gilcrist,* 91 Wn.2d 603, 612, 590 P.2d 809 (1979).

Smith's challenge to this evidence on the ground that her right against self–incrimination was compromised cannot stand since there was no proof of actual compulsion to testify. *State v. Vandiver,* 21 Wn. App. 269, 584 P.2d 978 (1978). Indeed, she took the stand voluntarily, and planned to do so from the beginning of the trial.

Smith's final assignment of error concerns the court's refusal to admit into evidence certain progress notes and summaries about Sharon made at Fircrest. The documents contained reports of allegedly false accusations made by

Sharon against Smith at various times prior to the assault. They were offered to impeach Sharon's credibility, a central issue in the case.

The record shows that, on cross–examination, Sharon was asked about the accusations. Defense counsel also elicited testimony from two witnesses and from Smith which covered the same incidents described in the offered documents. All of this testimony was properly admitted under ER 608(b). But, under the same rule, these instances of conduct may not be proved by extrinsic evidence such as the documents offered here. ER 608(b) reads, in part:

> **(b) Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, . . . may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross–examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross–examined has testified.

Even if the documents were admissible under ER 608(b), the trial court in this circumstance was not obligated to admit them. The jury heard testimony concerning the prior instances. The court may, in its discretion, refuse to admit evidence which is merely cumulative. *Toftoy v. Ocean Shores Properties, Inc.*, 71 Wn.2d 833, 431 P.2d 212 (1967); *Braack v. Bailey*, 32 Wn.2d 60, 200 P.2d 525 (1948).

The court stated its reasons for refusing the documents:

> THE COURT: The offer of proof will be noted and rejected. There has already been substantial testimony I have allowed concerning complaints by Sharon . . . from your client and from several other people that I think covered most of these areas. Two of the notes I don't know who wrote them; two of the notes were written by [y]our own client. I think they are all remote in time and basically irrelevant.

The admission or refusal of evidence is a matter of trial court discretion, reversible only upon abuse. *Maehren v.*

*Seattle,* 92 Wn.2d 480, 599 P.2d 1255 (1979); *State v. Jones,* 26 Wn. App. 551, 614 P.2d 190 (1980). Not only has Smith failed to show any abuse of discretion, but on the record the court had reason enough to refuse the documents.

Affirmed.

JAMES, C.J., and WILLIAMS, J., concur.

Reconsideration denied October 6, 1981.

Review granted by Supreme Court January 29, 1982.