668 A.2d 938

Stephen HARRIS

v.

STATE of Maryland.

No. 1094, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Dec. 26, 1995.

400

George E. Burns, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, and Mark Colvin, Assistant Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, Paul Victor Jorgensen, Middletown, for appellee.

Bruce W. Koenig, Intervenor.

Argued before WILNER, C.J., and BLOOM and HOLLANDER, JJ.

WILNER, Chief Judge.

The issue before us is whether the Circuit Court for Frederick County erred in directing that the Office of the Public Defender serve as "standby counsel" for a defendant who is eligible for representation by the Public Defender, whom the Public Defender is willing to represent, but who has effectively waived his right to the assistance of counsel in accordance with Md.Rule 4–215. We shall hold that the court did not err.

### UNDERLYING FACTS

On August 5, 1994, in a 10–count indictment, Bruce Koenig was charged with two counts of murder, several handgun

violations, armed robbery, and theft. The indictment stems from an allegation that, on June 20, 1994, Koenig robbed and murdered his parents.

The District Public Defender, Franklin Stillrich, and his assistant, John Chillas, entered their appearances on August 10 by filing pleas on behalf of Koenig of not guilty, not criminally responsible, and not competent to stand trial. By reason of the latter two pleas, the court ordered that Koenig be examined by the Department of Health and Mental Hygiene. Pending that examination, Mr. Stillrich filed a number of motions and sought and received substantial discovery from the State.[1]

On December 9, 1994, the State filed a notice of its intention to seek the death penalty, or, in the alternative, life imprisonment without parole. On February 13, 1995, as a result of those notices, Mr. Stillrich and Mr. Chillas struck their appearances and entered instead the appearance of Thomas Saunders, of the Public Defender's Capital Defense Division. Two days later, the additional appearance of Wendy Zerwitz— apparently a panel attorney selected by the Public Defender— was entered as co-counsel with Mr. Saunders.

On June 30, 1995, Koenig filed a *pro se* motion to dismiss Mr. Saunders and Ms. Zerwitz and to appoint new counsel for him. He alleged in his motion that his current attorneys had failed in several respects to conduct discovery and properly investigate the case. At a hearing on the motion held on July 12 before Judge Dwyer, Koenig stated that he and Mr. Saunders had "some fundamental differences on how the case should be handled" and that he wanted to be "actively involved in the case," including the right to question and interview witnesses. He told the court that "[w]e've just gotten to a point where we are not able to be in agreement on anything on the case. The trust, confidence I think on both parts, has broken down and I cannot work with him." In response to the

---

1. The record before us does not indicate the results of the Department's examination.

court's questions, he identified a number of witnesses that had not been interviewed and certain records that had not been examined.

Mr. Saunders responded that he and Ms. Zerwitz had met with Koenig 13 times, that they had reviewed with him all relevant documents and given him copies of most of them, and that they had made an adequate investigation. The court accepted that response and found as a fact that there was "no meritorious reason whatsoever for you to discharge these attorneys." The court then warned Koenig that if he proceeded to discharge the attorneys, he would either have to hire an attorney, which Koenig had said he could not afford to do, or proceed on his own. Koenig responded that he wished to proceed on his own, perhaps attempt to obtain private counsel.

The court thereupon warned Koenig again that, if the court allowed him to dismiss Mr. Saunders and Ms. Zerwitz, he would be required to proceed without an attorney, noting that a suppression hearing was scheduled in August and trial was set for September. Koenig asked for a few days to consider the matter.

When the hearing resumed on July 17, Koenig asked the court to allow a "hybrid defense." Noting that such a defense was not available in Maryland, Mr. Saunders suggested that what Koenig really wanted was a "standby counsel," *i.e.,* "someone who would sit with him, provide him legal advice and he would drive the case, that is determine what [is] to be done." Koenig added that he needed "to understand the technical points, to know when objections are appropriate and when they're not, what is admissible and what should not be admitted" but that he wanted to have a more active role in his case "in determining how we're going to proceed, who's going to be called as witnesses, what the nature of the defense is going to be."

After further discussion regarding the role of counsel, Koenig asked "to proceed with what's been referred to as standby counsel, so I can have a much more active part in the conduct of the trial." Specifically, he wanted to be able to address the

jury and question witnesses. Standby counsel would also be able to question witnesses and would be there "to instruct and advise and assist me on the legal technicalities, the points of law that I am not aware of at this point." Mr. Saunders noted that standby counsel had been provided by the Public Defender in other cases, mentioning in particular that of Anthony Grandison (*see Grandison v. State,* 305 Md. 685, 506 A.2d 580, *cert. denied, Grandison v. Maryland,* 479 U.S. 873, 107 S.Ct. 38, 93 L.Ed.2d 174 (1986), and *Grandison v. State,* 341 Md. 31, 668 A.2d 889). The State asked the court to grant Koenig's request.

The court thereupon conducted a waiver inquiry pursuant to Md.Rule 4–215. That inquiry revealed that Koenig had been hospitalized for mental problems in 1983, 1985, and 1986, for about a month each time, in a Veteran's Administration hospital in Texas. One diagnosis was manic depression, for which he had taken lithium. He was under psychiatric care as well in 1989 during an incarceration in Texas. Koenig said that he stopped taking the lithium in 1993. The court, for at least the third time, warned Koenig that, if Mr. Saunders and Ms. Zerwitz were discharged, he may not ultimately get standby counsel and that, if he did, counsel would be assigned by the Public Defender's Office, that standby counsel may have no funds for investigative work and that even the Public Defender, if chosen as standby counsel, would not be doing investigative work.

At the end of the questioning and discussion, Koenig again asked that counsel be discharged and that standby counsel be appointed. The court was presumably aware from the State's response to discovery that the State intended to call about 70 witnesses at trial. It found that Koenig's motion was freely and voluntarily made and, both orally from the bench and in an order filed July 28, 1995, struck the appearances of Mr. Saunders and Ms. Zerwitz, found that Koenig had knowingly and intentionally waived his right to counsel, but directed the Office of the Public Defender "to provide standby counsel at the trial of this matter."

On August 16, the Office of the Public Defender appealed the order directing it to provide standby counsel, eventually naming Judge Dwyer as the appellee. We granted Koenig's motion to intervene in the appeal.

## DISCUSSION

### The Issues

The five-page brief filed by the Public Defender on the merits makes essentially two assertions: that a court has no authority to require the Public Defender to provide representation and that there is no right, in any event, to hybrid representation. For the first proposition, it cites *Thompson v. State*, 284 Md. 113, 394 A.2d 1190 (1978); *Baldwin v. State*, 51 Md.App. 538, 444 A.2d 1058 (1982); and *State v. Miller*, 337 Md. 71, 651 A.2d 845 (1995); for the second, it cites *Parren v. State*, 309 Md. 260, 523 A.2d 597 (1987).

The State has moved to dismiss the appeal on a number of procedural grounds. On the merits, it seeks to narrow the issue. It points out that Koenig is indigent and is therefore eligible for representation by the Public Defender, that the Public Defender indeed entered an appearance for Koenig and is willing to represent him in the traditional manner as counsel, and that the court has general inherent authority to appoint standby counsel. The only question it sees raised in the appeal is whether there is anything in Md.Code, art. 27A—the statute creating the public defender system and setting forth the powers and duties of the Public Defender— that precludes the court from appointing the Public Defender as standby counsel.

### Motion To Dismiss

The State conceded, for purposes of its motion to dismiss, that the Office of the Public Defender, listed as the appellant, has standing to pursue the appeal, even though it was technically not a party to the underlying case in the circuit court. We agree. The order appealed from directed specific action on appellant's part that presumably will have a

fiscal and operational impact on the Office. The State also concedes that the pursuit of this appeal does not amount to an impermissible conflict of interest between the Office and Koenig. We agree with that as well. The appearances of the public defenders have been stricken, and there is, therefore, *at this point,* no clear attorney-client relationship from which a conflict could arise. The issue is whether the court is empowered to create a lesser form of such a relationship.

■ The State's motion seems to be based on the fact that, (1) after the appeal was noted, Koenig moved to substitute a private attorney as standby counsel, and (2) the case in circuit court is not over, and no final judgment has been entered. The first point is now moot. We are told that Koenig has withdrawn his motion for private counsel. Thus, the order requiring the Office of the Public Defender to act as standby counsel is still in effect. With respect to the finality argument, this seems to us to be a proper case for application of the collateral order doctrine, allowing an immediate appeal.

■ Under the collateral order doctrine, an order not constituting a final judgment may be immediately appealed if it conclusively determines the disputed question, resolves an important issue, is completely separate from the merits of the action, and is effectively unreviewable on appeal from the final judgment. *Huff v. State,* 325 Md. 55, 599 A.2d 428 (1991); *Gillis v. State,* 333 Md. 69, 633 A.2d 888 (1993), *cert. denied, Gillis v. Maryland,* —— U.S. ——, 114 S.Ct. 1558, 128 L.Ed.2d 205 (1994).

The order directing the Office of the Public Defender to provide standby counsel satisfies each of those conditions. The order conclusively determined the duty of the Office. The issue of whether a court can require the Office to provide standby counsel in cases where the defendant has waived counsel has significant jurisprudential, fiscal, and public policy implications and is therefore an important issue. That issue is completely separate from the underlying case—whether Koenig is guilty or not guilty of the charges against him.

In contrast to the view of the Third Circuit Court of Appeals in *U.S. v. Bertoli*, 994 F.2d 1002 (3d Cir.1993), we believe that the order is effectively unreviewable on appeal from a final judgment. If Koenig is acquitted, of course, there will be no appeal; even if he is convicted, unless he chooses to appeal and to raise the issue himself, it likely cannot be raised. At that stage, there could well be a significant conflict of interest if the appellate division of the Public Defender's Office attempts to raise the issue in the face of Koenig's request for standby counsel, and, if raised only by the public defender, the issue might well be moot.

The *Bertoli* Court held that the ability of a lawyer directed to serve as standby counsel to appeal from a finding of contempt in the event he refused to comply with the order sufficed to make the order otherwise reviewable. We do not agree. For one thing, the order before us was directed to the Office of Public Defender, not an individual lawyer, and it is not clear how the Office itself could be punished for contempt. Even if the sanction ran against the Public Defender personally or against one of his assistants, we do not believe that a lawyer—an officer of the court who may also face disciplinary proceedings if he or she deliberately violates a specific order of a court—ought to have to run the risk of a contempt finding before being able to challenge an order of this kind that the lawyer believes to be unlawful. Finally, the order is in the nature of a mandatory injunction, directing specific conduct, and, to that extent, would be appealable under Md.Code Cts. & Jud.Proc. art., § 12–303.

For these reasons, we deny the motion to dismiss.

### The Merits

The Sixth Amendment to the United States Constitution and art. 21 of the Maryland Declaration of Rights guarantee to a person accused of a crime the effective assistance of counsel. In *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), the Supreme Court recognized an independent right implicit in the Sixth Amendment to

self-representation, *i.e.*, the right of a defendant to represent himself, in proper person, without counsel. To exercise that right, however, a defendant must knowingly and voluntarily waive his alternative, and favored, right to counsel. In Maryland, that must be done in accordance with the procedures and requirements in Md.Rule 4–215.

In recognizing the Constitutional right of self-representation, the *Faretta* Court noted the risk that *pro se* defendants may become disruptive in court and declared that a trial judge "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct." 422 U.S. at 834 n. 46, 95 S.Ct. at 2541 n. 46. That, of course, would immediately create the dramatic anomaly of a defendant having no attorney, because he waived his right to counsel, and yet not able to represent himself. Perhaps with that possibility in mind, the Court observed, "Of course, a State may—even over objection by the accused—appoint a 'standby counsel' to aid the accused if and when the accused requests help, and to be available to represent the accused in the event that termination of the defendant's self-representation is necessary." *Id.* In making that statement, the Court cited with apparent approval *United States v. Dougherty,* 473 F.2d 1113 (D.C.Cir.1972), where the D.C. Circuit Court found what it termed "amicus" counsel permissible and helpful to a defendant exercising his right of self-representation. The *Dougherty* Court stated, at 1125, that "[i]f defendant refrains from intentionally obstructive tactics, amicus would be available to provide advice on procedure and strategy."

The Supreme Court revisited the device of standby counsel in *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984). It began by confirming that, in *Faretta,* the Court had held that "a trial court may appoint 'standby counsel' to assist the *pro se* defendant in his defense." *Id.* at 170, 104 S.Ct. at 947. The issue in *McKaskle* was the permissible role that standby counsel, appointed over the defendant's objection, could play consistent with the defendant's right of self-representation. Mr. Wiggins, charged with robbery, blew hot and cold with respect to whether he wanted the assistance

of counsel. He accepted the appointment of two attorneys but insisted on defending himself *pro se*. His ultimate complaint, in a Federal habeas corpus proceeding, was that the attorneys were overzealous and interfered too much, thereby compromising his right of self-representation.

The Fifth Circuit Court of Appeals, agreeing with Wiggins, held that standby counsel was "to be seen, but not heard," and that they were "there for advisory purposes only, to be used or not used as the defendant sees fit." *Wiggins v. Estelle*, 681 F.2d 266, 273 (5th Cir.1982). The Supreme Court rejected that approach. It declared that

> "both *Faretta*'s logic and its citation of the *Dougherty* case indicate that no absolute bar on standby counsel's unsolicited participation is appropriate or was intended. The right to appear *pro se* exists to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense. Both of these objectives can be achieved without categorically silencing standby counsel."

465 U.S. at 176–77, 104 S.Ct. at 950.

That said, the Court held that the *Faretta* right of self-representation did impose at least two limits on standby counsel. First, the *pro se* defendant is entitled to preserve actual control over the case; if counsel's participation, over the defendant's objection, effectively allows the attorney "to make or substantially interfere with any significant tactical decisions, or to control the questioning of witnesses, or to speak *instead* of the defendant," the *Faretta* right would be eroded. *Id.* at 178, 104 S.Ct. at 951. Second, counsel's participation without the defendant's consent should not be allowed "to destroy the jury's perception that the defendant is representing himself." *Id.*

In the *Wiggins* case, the attorneys made motions, dictated proposed strategy into the record, registered objections, and suggested questions for Wiggins to ask. They were, in no sense, the "potted plants" of more recent allusion. In that regard, the Court noted, at 183, 104 S.Ct. at 953–54, that

"*Faretta* does not require a trial judge to permit 'hybrid' representation of the type Wiggins was actually allowed," but it then added:

> "[I]f a defendant is given the opportunity and elects to have counsel appear before the court or jury, his complaints concerning counsel's subsequent unsolicited participation lose much of their force. A defendant does not have a constitutional right to choreograph special appearances by counsel. Once a *pro se* defendant invites or agrees to any substantial participation by counsel, subsequent appearances by counsel must be presumed to be with the defendant's acquiescence, at least until the defendant expressly and unambiguously renews his request that standby counsel be silenced."

The discussions with respect to standby counsel in *Faretta* and *McKaskle* are in the context of the defendant's right to self-representation. They examine whether, and to what extent, such counsel, if appointed, may interfere with the exercise of that right. We do not read either case as deciding that a State court is obliged to appoint such counsel or that it even has the power under State law to do so.

The Maryland Court of Appeals dealt with some aspects of the matter in *Parren v. State, supra,* 309 Md. 260, 523 A.2d 597, although it did not address the particular issues before us in this case. The principal question in *Parren* was whether a defendant had the right to "hybrid" representation, and the Court held that he did not. Although the Court cited *Faretta* and *McKaskle* for other purposes, it did not mention the term, or the concept of, standby counsel but focused instead on the term "hybrid representation" that had been used in an earlier stage of the proceeding by this Court.

The *Parren* Court regarded hybrid representation as being in the nature of the defendant and an attorney acting together as co-counsel, encompassing "both the participation of the defendant in the conduct of his trial when he had not effectively waived the assistance of an attorney to defend him, and the participation by an attorney in the conduct of the trial when

the defendant was defending *pro se.*" 309 Md. at 264, 523 A.2d 597. It held that a defendant has no Constitutional, statutory, or common law *right* to that kind of representation: the defendant has a right to counsel and a right to self-representation; there is no third right to something in between.

In that regard, the Court made clear that "[t]here can be but one captain of the ship, and it is he [or she] alone who must assume responsibility for its passage, whether it safely reaches the destination charted or founders on a reef." *Id.* at 264, 523 A.2d 597. The Court immediately went on to point out, however, that it did not follow "that a defendant appearing *pro se* may not have a lawyer participate to any extent in the trial. Such participation may be permitted in the discretion of the presiding judge under his general power to control the conduct of the trial." *Id.* at 265, 523 A.2d 597. But even then, the Court admonished, "[w]hen a defendant appears *pro se*, it is he who calls the shots, albeit, perhaps with the aid, advice and allocution of counsel in the discretion of the trial judge." *Id.*

*Parren* thus establishes, on the one hand, that there is no right of a defendant who validly elects to waive counsel and proceed *pro se* to insist on the appointment of an attorney as either a co-counsel or as a mere helpmate but, on the other, that, if he obtains an attorney willing to fill the role of helper, the court, in its discretion, may allow the attorney to so act. Left unsaid, because it was not before the Court, was whether a court can appoint an attorney, or in particular the Public Defender, to act in that limited capacity over the attorney's objection.

It is evident that there is some overlap between the concept of hybrid representation and the role that standby counsel may play. The concerns expressed by the *Parren* Court about hybrid representation, 309 Md. at 269, 523 A.2d 597, are essentially those noted by the Supreme Court in *McKaskle* with respect to an over-exuberant standby counsel.

The two concepts are quite different, however. To the extent that a hybrid representation involves the defendant and an attorney serving as a form of co-counsel, it obscures which of them has ultimate responsibility and control and, for that reason, is inconsistent with both representation by counsel and self-representation. Standby counsel, on the other hand, has the very different and much more limited purpose of assisting the defendant in effectively exercising his right of self-representation and, as a corollary, assisting the court in maintaining some measure of control over the proceeding.

In that sense, hybrid representation, as viewed by the *Parren* Court with respect to a defendant purportedly choosing self-representation, appears to us to be little more than a description of the prohibited areas noted in *McKaskle,* into which standby counsel may not stray.

The prevailing rule around the country seems to be, as noted in *Faretta,* that a court does have the discretionary authority to appoint a standby counsel for a defendant who has elected to proceed *pro se,* even over the defendant's objection. *See Russaw v. State,* 572 So.2d 1288 (Ala.Cr.App. 1990); *State v. Hutch,* 75 Haw. 307, 861 P.2d 11 (1993); *People v. Gibson,* 136 Ill.2d 362, 144 Ill.Dec. 759, 556 N.E.2d 226 (1990); *State v. Buckland,* 245 Kan. 132, 777 P.2d 745 (1989); *State v. Green,* 238 Neb. 492, 471 N.W.2d 413 (1991); *State v. Gallagher,* 274 N.J.Super. 285, 644 A.2d 103 (A.D.1994); *State v. Rotibi,* 117 N.M. 108, 869 P.2d 296 (App.), *cert. denied,* 117 N.M. 215, 870 P.2d 753 (1994); *People v. Sawyer,* 57 N.Y.2d 12, 453 N.Y.S.2d 418, 438 N.E.2d 1133 (1982), *cert. denied,* 459 U.S. 1178, 103 S.Ct. 830, 74 L.Ed.2d 1024 (1983); *Culverhouse v. State,* 755 S.W.2d 856 (Tex.Crim.App.), *cert. denied,* 488 U.S. 863, 109 S.Ct. 164, 102 L.Ed.2d 134 (1988); *State v. Watkins,* 71 Wash.App. 164, 857 P.2d 300 (1993). Most courts make clear that, because it is a discretionary call, the refusal to appoint standby counsel is not error. *See Molino v. Dubois,* 848 F.Supp. 11, 13 n. 3 (D.Mass.1994). That view, we think, is consistent with the pronouncements of the *Parren*

Court.[2]

■ We are thus down to the question of whether the court can appoint the Public Defender over *his* objection (as opposed to the objection of the defendant). To the best of our knowledge, this has been addressed in only four cases, none of which were cited by either of the parties.

In *Ligda v. Superior Court*, 5 Cal.App.3d 811, 85 Cal.Rptr. 744 (1970), a deputy public defender had entered his appearance on behalf of the defendant. The defendant later waived counsel and elected to proceed *pro se*, but, with the concurrence of the lawyer, the court ordered him to act as a standby counsel. On the day of trial, the public defender for the county protested the order and was successful in having a higher court temporarily enjoin the trial court from enforcing it. The case eventually reached the Court of Appeals for the First Appellate District, which concluded that the trial judge did not exceed his jurisdiction in requiring the public defender to remain as standby counsel. At 826, 85 Cal.Rptr. 744, the court stated:

"The deputy public defender who had been ordered to assist in conduct of the case was a person connected with a judicial proceeding before the court. Upon relieving him as counsel in a pending case, the court had the power to require him, both as an officer of the court as an attorney, and in his official capacity, to continue to 'assist' the defendant, pursuant to the constitutional mandate."

In *Littlefield v. Superior Court*, 18 Cal.App.4th 856, 22 Cal.Rptr.2d 659 (1993), the appellate court for the Second Appellate District took a different approach. There, too, a trial court had ordered the public defender, over his objection,

---

**2.** The California Supreme Court has suggested that it would be an abuse of discretion not to appoint standby counsel, at least in a capital case. *People v. Bigelow*, 37 Cal.3d 731, 209 Cal.Rptr. 328, 691 P.2d 994 (1984); *People v. Crandell*, 46 Cal.3d 833, 251 Cal.Rptr. 227, 760 P.2d 423 (1988). Minnesota appears to have a rule requiring such an appointment, at least for indigent defendants. *State v. Savior*, 480 N.W.2d 693 (Minn.App.1992).

to remain as standby counsel after the defendant elected to proceed *pro se,* and the public defender promptly sought appellate review of the order. Over a dissent, the appellate court distinguished *Ligda* and concluded that the trial court was not empowered to appoint the public defender. At 860, 22 Cal.Rptr.2d 659, it held that

> "[t]he court's authority in appointing the public defender is limited to appointments to defend a person charged with a crime, or at least to assist in the defense of such a person. [citation omitted.] A standby counsel represents no one. Like an understudy in a play, his or her task is to wait in readiness to play a role should the occasion arise. Standing by is not defending."

The Florida and Illinois courts have taken a position more consistent with *Ligda.* In *Behr v. Bell,* 646 So.2d 837 (Fla. App.1994), the trial court appointed the public defender as standby counsel to assist an indigent defendant who had elected to represent himself. The public defender sought appellate review of that appointment, arguing that "as a creature of statute, he is limited by law in the representation he can provide." *Id.* at 837–38. The Florida appellate court decided not to follow the *Littlefield* approach. Instead of focusing on the duty to "defend," as the *Littlefield* Court had done, the Court noted the duty under the Florida statute to "represent" indigent persons and concluded, in effect, that serving as standby counsel was a form of representation.

In *People v. Gibson, supra,* 144 Ill.Dec. 759, 556 N.E.2d 226, the public defender was appointed to serve as standby counsel for an indigent defendant who had elected to proceed *pro se.* Prior to trial, the public defender moved to withdraw, claiming that the Illinois Public Defender Act provided no authority for such an appointment. The court allowed the withdrawal, whereupon the defendant went to trial unrepresented and unassisted. The Illinois Supreme Court reversed, concluding that the statute *did* allow the appointment of the public defender as standby counsel and that permitting his withdrawal constituted a prejudicial abuse of discretion. The public defender's argument that the statute allowed only his appoint-

ment as an "attorney," and that, as standby counsel, he would not be serving in that capacity, was rejected. The appellate court concluded that the range of duties allowed to standby counsel was consistent with the duty to act as "attorney."

Each of these courts was construing the relevant State law, and that is also what we must do.

The public defender system in Maryland is created by Md.Code, art. 27A. Section 1 of that article sets forth the public policy behind the system:

> "to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, *including related necessary services* and facilities, in criminal and juvenile proceedings within the State, and to assure *effective assistance and continuity of counsel* to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and to authorize the Office of Public Defender to administer and assure enforcement of the provisions of this article in accordance with its terms."

(Emphasis added.)

In contrast to the California statute, which spoke in terms of "defending" indigent defendants, § 4 of art. 27A declares the "primary duty" of the public defender to be the provision of "legal representation" for any indigent defendant "eligible for services under this article."

Assuming that the proceeding falls within the ambit of the statute, the key criterion for determining the public defender's responsibility is whether the defendant is "eligible for services under this article," *i.e.*, whether he is indigent. Section 4, as noted, speaks of providing "legal representation," without defining the scope of that term. The Florida Court in *Behr* concluded that the concept of representation included serving as standby counsel. That view is not inconsistent with the language in § 1 of our statute, declaring that representation includes "related necessary services." Indeed, the public defender has at least tacitly recognized that by serving on other occasions in such capacity voluntarily. Accordingly, we

align ourselves with the Florida, Illinois, and *Ligda* approach and hold that art. 27A does not preclude the public defender from serving as standby counsel.

The final question, then, is whether a court can order the public defender to act as standby counsel over his objection. Here is where we need to consider *Thompson v. State, supra,* 284 Md. 113, 394 A.2d 1190; *Baldwin v. State, supra,* 51 Md.App. 538, 444 A.2d 1058; and *State v. Miller, supra,* 337 Md. 71, 651 A.2d 845.

In both *Thompson* and *Baldwin,* the public defender refused to represent a defendant on the ground that the defendant was not indigent and was therefore not eligible for services under the statute. The trial court, in both cases, accepted that determination and, when the defendant proved unable or unwilling to retain private counsel, forced him to trial without any attorney. In both cases, the resulting convictions were reversed—in *Thompson* in part because the court failed to comply with the waiver of counsel inquiry procedures of then-Rule 723, and in both cases because the court further failed to make its own assessment of the defendant's indigency for purposes of deciding whether to exercise its independent statutory authority under § 6 of art. 27A to appoint counsel.

The question of whether the court *could* have appointed the public defender under § 6 of art. 27A was not directly at issue in either case. In commenting on the trial court's refusal to order the public defender to provide representation after he had found the defendant ineligible, however, the *Thompson* Court noted that such refusal was proper because "whether the Public Defender represented a particular defendant was for the Public Defender and not for the court." 284 Md. at 128, 394 A.2d 1190. We accepted that view, as we were required to do, in *Baldwin.*

These cases do not compel the conclusion asserted by the Public Defender in this case. It is one thing to say that a court cannot second-guess a factual determination as to eligibility made by the Executive official charged by law with

making that determination, especially when the same law gives the court an independent right to appoint other counsel if it disagrees with the Public Defender's conclusion. It is something quite different to declare that the Public Defender, who voluntarily entered his appearance and acknowledged Koenig's eligibility, cannot be required, for the assistance of both the court and the defendant, to provide a more limited "related service" to the eligible defendant. This does not constitute a second-guessing of any factual determination made by the Executive official authorized to make it; nor does it represent a directive to provide a service not allowed by the statute.

We turn, then, to *State v. Miller.* The issue in *Miller* was not one of representation, but whether the public defender was obliged to pay for a transcript where the defendant, though indigent, was being represented in the appeal by private counsel. The Court of Appeals held no—that as the public defender had not declined representation, the defendant could not proceed with private counsel but call upon the public defender to pay for the transcript, *i.e.,* to pick and choose among the services of the public defender.

*Miller* is a much closer case. To a large extent, having standby counsel available is indeed tantamount to picking and choosing from among the panoply of services included within the scope of legal representation. The issue, though, is on a different plane.

In *United States v. Bertoli, supra,* 994 F.2d 1002, the Court of Appeals for the Third Circuit concluded that a Federal court's inherent authority to manage its own affairs included the power to force private counsel, who had already entered an appearance in the case, to continue as standby counsel, even after being discharged by the defendant. To some extent, that is mirrored in Md.Rule 4–214(c), which allows a court to deny leave to withdraw an appearance in a criminal action if the withdrawal would "delay the trial of the action, would be prejudicial to any of the parties, or otherwise would not be in the interest of justice."

The authority of a court to appoint standby counsel, even over the objection of a *pro se* defendant, is premised, at least in part, on the determination that such counsel serves the interest of the court as well as that of the defendant. It arises from a recognition that the absence of such counsel may indeed delay the trial—if not its commencement, at least its efficient prosecution—or be prejudicial to a party, or not serve the interest of justice. If, then, there is the general authority to preclude altogether the withdrawal of an attorney who has entered an appearance, why should that authority not (1) extend to the public defender who has entered his appearance in the action and thus acknowledged that the defendant is eligible for his services, and (2) encompass the ability to require the attorney to perform the lesser role of standby counsel?

Almost every court that has addressed this issue, from the Supreme Court down, has expressed some concern over the practical implications of having standby counsel, and, indeed, there are real potential problems. The *McKaskle* Court noted one of them—overparticipation by counsel, thereby impinging upon both the reality and the appearance of self-representation. There is also the significant problem of confidentiality—how much attaches and to what does it attach—not to mention the extent to which standby counsel is obliged to blindly do the defendant's bidding and the extent to which the defendant may later assert a claim for post conviction relief based on poor advice or the omission to give advice or perform some service. These are problems inherent in the very nature of standby counsel, which, as we have indicated, is nonetheless a well-recognized form of assistance.

The tacit response to the problems of *having* standby counsel are the problems of *not* having one in a complex and serious case. This case is illustrative. It is a capital case; Koenig is facing the death sentence for two murders. We can properly take judicial notice, from the very Opinions of the Supreme Court and the Court of Appeals in such cases, of the complexities inherent in this kind of case—complexities that

can challenge the abilities of even seasoned lawyers and judges. Koenig has no legal training; he has a long history of mental illness, and indeed his competence even to stand trial was questioned in this case. The State proposes to call some 70 witnesses. Koenig is in jail, wholly unable to interview witnesses or otherwise prepare a defense. All of this, of course, was explained to him before he elected to proceed *pro se* and some of his dilemma is a direct consequence of that decision. It is not sympathy for him that we are expressing. Rather, it is the prospect of a fractious, inefficient, and potentially unfair trial that is of concern—an invitation to prejudicial error.

For the reasons noted, we hold that the court did not exceed its authority in effectively limiting the withdrawal of the Public Defender's Office. Because the criminal proceeding has apparently been placed "on hold" pending resolution of this dispute, and because this matter has previously been presented to the Court of Appeals through a petition for writ of prohibition, we see no reason to delay issuance of the mandate.

ORDER AFFIRMED; APPELLANT TO PAY THE COSTS. MANDATE TO ISSUE FORTHWITH.