**Carl Edwin WIGGINS, Petitioner-Appellant,**

v.

**W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.**

No. 80–2278.

United States Court of Appeals, Fifth Circuit.

July 26, 1982.

Opinion on Denial of Rehearing and Rehearing En Banc Nov. 8, 1982. See 691 F.2d 213.

---

1. The record is likewise opaque on this point.

**268**

Craig Smyser, Houston, Tex. (Court-appointed), for petitioner-appellant.

Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

GARZA, Circuit Judge:

█ Rarely does a case come before this Court with an issue never previously addressed. This is such a case. While other issues have been raised,[1] the pivotal issue on this appeal is whether a defendant who is permitted to conduct his own defense may still be denied his constitutional right of self-representation[2] by unwanted interference in his behalf by court-appointed, standby counsel. We conclude that such a violation can occur, as it did in the instant case, and reverse the district court's denial of the Great Writ.

The circumstances surrounding the crime are easy to relate. In the early evening of January 17, 1972, a man wielding a rusty pistol robbed a Piggly Wiggly store in San Antonio. After having the cashier stuff the day's proceeds into a brown paper bag, the robber fled the store and drove away in his car. Before driving away, however, a second store employee managed to see the thief's license plate number and wrote it down in the palm of his hand. That number was later traced to the appellant, Carl Wiggins.

After a few false starts,[3] Wiggins was indicted and subsequently brought to trial. Before trial commenced, however, appellant

---

1. On this appeal, appellant has reurged all of the theories for federal habeas corpus relief presented below. Wiggins claims: (1) that he was denied due process because of pre-indictment delay; (2) that he was denied his right to a speedy trial; (3) that he was placed in double jeopardy when he was reprosecuted after his first conviction was set aside; (4) that he was denied his constitutional right to represent himself; (5) that he was denied effective assistance of counsel; (6) that he was denied the right to obtain defense witnesses; (7) that he was denied an adequate record for appeal; and (8) that he was denied the right to represent himself on appeal.

 If meritorious, the first three theories would demand that appellant forever be set free. The balance are less final. While the second three theories would require that Wiggins be given a new trial, the latter two would only permit him to re-appeal. A review of the record and applicable law reveals the first set to be spurious. The bulk of the remainder need not be discussed in light of our reversal of the district court's denial of habeas relief.

2. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

3. Wiggins was originally arrested on February 20, 1972, and an indictment was returned approximately two months later. On May 17, 1972, defendant successfully had that indictment quashed for being fatally defective. Accordingly, he was released. On June 7, 1972, Wiggins was reindicted for the same offense and again taken into custody on June 29, 1972. He was tried in January 1973, found guilty, and, because of a charge of enhancement, was sentenced to life imprisonment. Approximately three weeks after sentencing, a hearing was held at defendant's request regarding two motions: a motion to withdraw notice of appeal and a motion for new trial. At that hearing, it was discovered that the second indictment was also fatally defective, and the court granted Wiggins' request for a new trial. Five days later, on March 28, 1973, two new indictments were returned by the grand jury, both alleging the same offense. On June 4, 1973, the State elected one of the indictments to try Wiggins under, 'and the trial in question commenced.

requested that he be permitted to conduct his own defense. The court granted that request, but at the same time appointed two attorneys as standby counsel.[4]

The conduct of these attorneys during the course of the trial is the core of appellant's argument that he was denied his Sixth Amendment right of self-representation. While the court made it clear that counsel were present for advisory purposes only,[5] it was not long before one of the attorneys began to take on a more active role. Soon Wiggins began to protest against standby counsel's unsolicited participation, claiming that it prohibited him from conducting his own defense.[6] The court's response was that defendant was going to receive counsel's aid whether he wanted it or not.[7] When defendant later requested that the court at least instruct standby counsel not to take the initiative, the court refused.[8] Thereafter, counsel continuously partici-

---

4. DEFENDANT: Your Honor, I am defending myself and I feel that relative to the motions that I filed, that they can be heard without the transcript.

MR. SAMPLES: Your Honor, there has—an issue has been raised as to the representation of Mr. Wiggins. The Court did appoint myself, Benjamin Samples to represent Mr. Wiggins, along with Mr. Norvell Graham who is here, and although I understand there was a previous trial and Mr. Wiggins did at that time represent himself, I don't know whether the determination has been made by this Court as to who is going to represent whom.

THE COURT: Well, Mr. Wiggins has a right to represent himself, and under the law the Court has made available to him for counsultation [sic] and/or use, that he would wish to make within the framework of your professional abilities, both you and Mr. Graham who will be available, that he may consult with whoever he wishes to consult.

Now, as I understand the law, he has a right to represent himself as long as he does that within the framework of the law and the rules of the proper conduct of the trial. There may be times when his knowledge and ability is not such that he is doing it properly and it may be that the Court at that time will suggest to him that he consult with counsel, but counsel will be here at the counsel table with him and confer with him as he wishes.

. . . .

Let the record show that the defendant, Mr. Carl Edwin Wiggins, has by his own design, elected to be attorney for himself pro se, but that the Court has appointed previously Mr. Ben Samples and also Mr. R. Norvell Graham, both practicing members of the San Antonio Bar, to assist Mr. Wiggins, to advise Mr. Wiggins if he wishes to be advised, or to consult with them when the Court directs he consult with them, that they are here present in Court and available sitting right behind him.

You may proceed.
Record, vol. I, at 12–14.

5. *Id.*

6. MR. GRAHAM: Again, Your Honor, we certainly believe that the arrest of the defendant's son, because of the, because of the—

DEFENDANT: Your Honor, the defendant's son was not arrested.

THE COURT: Wait a minute.

DEFENDANT: Your Honor, I would like to defend myself. I would appreciate it, sir, if you would ask this man to let me defend myself.

MR. GRAHAM: Certainly. Help yourself.

DEFENDANT: I would be grateful. I have not solicited his assistance, Your Honor, and I don't want it.

*Id.* at 39.

7. THE COURT: You are going to get help and/or assistance from him because you are obviously not a lawyer.

DEFENDANT: Yes sir. I am not a lawyer.

THE COURT: And this trial, if we do go into it, is going to be conducted according to the rules of law.

DEFENDANT: Yes sir.

THE COURT: And there might be an occasion when this Court is going to require that you consult with them as to what the proper procedure may be.

DEFENDANT: Yes sir.

THE COURT: You will have every right made available to you under the law, as this Court is able to determine.

DEFENDANT: I appreciate that, Your Honor, but for assistant counsel to initiate something that the defendant does not want, I would like to consult with the attorneys for advice. I will appreciate that, but for counsels to initiate something that is contrary to the defendant's defense, well, then, I couldn't appreciate that.

*Id.* at 40–41.

8. THE COURT: All right. Mr. Wiggins, what is your pleasure. Mr. Graham here was appointed just two days ago as additional counsel. The law provides that when an attorney is appointed to represent someone, he shall have ten days time in which to prepare. You have had one attorney, though, that has been available to you and has had a month and a half to prepare, but you wish to proceed at this time?

pated in the proceedings, both in and outside the presence of the jury. In addition to making objections too numerous to cite, counsel on several occasions cursed,[9] argued with defendant,[10] and moved for mistrial against the defendant's wishes.[11] By the time the smoke cleared, Wiggins had been convicted and sentenced to life imprisonment as a recidivist.

Little time was lost before Wiggins began running the gauntlet of direct appeal,[12] petitions for state writ of habeas corpus,[13] and a petition to the Supreme Court for writ of certiorari. When these routes proved unfruitful, Wiggins undauntedly applied for federal habeas corpus relief.[14] The district court disposed of the petition by adopting the recommendations of the federal magistrate to whom it had been referred. This appeal followed.

*Fool for a Client?* [15]

A

The leading case on the right to self-representation is *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562

---

**9.** One example of this occurred when Wiggins was examining a witness during voir dire:

DEFENDANT: I want to ask him this question here on this statement that's dated February 15. May I show it to you?

MR. GRAHAM: God damn it. Wait a minute. I am trying to get . . .

(Thereupon, Mr. Graham conferring with defendant.)

*Id.* at 215. *See also* Record, vol. II, at 422.

DEFENDANT: Yes, Your Honor, I do.

. . . .

THE COURT: You are waiving the ten days as far as Mr. Graham is concerned?

DEFENDANT: Yes, Your Honor.

THE COURT: The basis of that is that you expect to be an attorney for yourself pro se?

DEFENDANT: Yes, Your Honor. In fact, not only that, I would like to waive his assistance, if I may.

THE COURT: The Court is not going to relieve you of that. Now, you can use it or not use it. It's available to you in this case.

DEFENDANT: Yes sir, but I would ask the Court to ask Mr. Graham not to take the initiative to interfere with the defendant here, if I may do that?

THE COURT: Well—

DEFENDANT: I mean, if I want Mr. Graham's help I will ask for it and appreciate it if he wouldn't volunteer without me asking for it.

THE COURT: Well, Mr. Graham is a competent attorney and he has much experience in this type of thing and I am sure what he is trying to do is what he thinks is best for you. I am not going to order him to do or not to do anything. If some problem or situation arises, I will act on it at that time. I am not going to order him not to.

DEFENDANT: Your Honor, do I understand that the Court is forcing the services of Mr. Graham on the defendant?

THE COURT: His availability, yes.

DEFENDANT: May I except to that, Your Honor?

THE COURT: It's in the record.

*Id.* at 65–67.

**10.** The following is representative:

DEFENDANT: Your Honor, I have some questions relative to the in-Court—

MR. GRAHAM: We will take him on cross-examination.

DEFENDANT: I would like to ask him. They are very relevant.

MR. GRAHAM: You can get him on cross-examination. Sit down.

Record, vol. I, at 223.

**11.** MR. GRAHAM: Notwithstanding the Court's instruction, I am sure it is so prejudicial as to require a mistrial.

DEFENDANT: No, Your Honor. I object to a mistrial. I object to counsel—

THE COURT: I denied the motion for mistrial. Overruled.

MR. GRAHAM: Jesus Christ.

Record, vol. II, at 422. *See also* Record, vol. II, at 345–46, 498–99, 512–14 and 539–40.

**12.** *Wiggins v. State,* 520 S.W.2d 780 (Tex.Cr. App.1975).

**13.** Wiggins filed five petitions for state habeas corpus relief and hundreds of pages of various pleadings in the state courts. His first two applications were filed while his direct appeal was pending. The next two applications were denied by the Texas Court of Criminal Appeals on October 15, 1975, and May 3, 1978. On January 10, 1979, appellant's fifth application was denied; he was also found to have abused the writ.

**14.** Six separate points of error connected with his trial and conviction were alleged, together with two points of error connected with his appeal from that conviction. *See* note 1 *supra.*

**15.** "If there is any truth to the old proverb that '[o]ne who is his own lawyer has a fool for a client,' the Court by its opinion today now bestows a *constitutional* right on one to make a fool of himself." *Faretta v. California,* 422 U.S. 806, 852, 95 S.Ct. 2525, 2549, 45 L.Ed.2d 562, 592 (1975) (Blackmun, J., dissenting).

(1975). In that case, the accused clearly and unequivocally let it be known prior to trial that he wished to represent himself and did not want the aid of counsel. Yet despite a knowing and intelligent waiver, the state court compelled the accused to accept the services of a court-appointed public defender. The Supreme Court held, in a six to three decision, that under these circumstances, the defendant had been denied his constitutional right to conduct his own defense.

▮ In the case before us the defendant also chose, for whatever reason,[16] to proceed *pro se*. Unlike the *Faretta* case, however, the right was granted. Nevertheless, court-appointed standby counsel were appointed over Wiggins' objections.[17] As already shown, one of these attorneys did far more than merely "standby." The narrow issue presented on this appeal, then, is whether a defendant's Sixth Amendment right to self-representation may be violated by the unsolicited participation of overzealous, court-

**16.** Numerous theories have been advanced for why a defendant might choose to represent himself.

Defendant's refusal of the right to the assistance of counsel may be grounded on the defendant's belief that, with counsel, the defendant will be denied any opportunity to speak for himself or herself and that only through personal presentation of the case can the merits of the case really be made known. Further, a defendant may believe that no lawyer will faithfully represent the defendant at a fair fee, or that the judicial system is so inherently unjust that the only chance for a fair trial is for the defendant to represent himself or herself. Other motives may include the hope that the absence of counsel may afford a basis for reversal of a conviction regarded as inevitable, or the desire to ventilate hostility through the dramatic vehicle of a disorderly trial.

ABA Standards of Criminal Justice, The Trial Judge's Function, Standard 6–3.6(a) (2nd ed. 1980). *See generally* Comment, *The Right to Defend Pro Se in Criminal Proceedings*, 1973 Wash.U.L.Q. 679, 679–80 n.3 (1973); and Laub, *The Problem of the Unrepresented, Misrepresented and Rebellious Defendant in Criminal Court*, 2 Duq.L.Rev. 245 (1964).

By far, the most frequently cited theory for why a defendant will elect to proceed *pro se* is that of trial strategy. He may view self-representation as a means of invoking the jury's sympathy by projecting the image of the lone defendant against the mammoth State. Participation by court-appointed counsel would sour that image in the minds of the jurors. A defendant may also want the opportunity to have the jury judge him as a person, and hopefully decide all matters of credibility in his favor. As part of that plan, he may choose to take a very low key approach to trial, thereby conveying the impression that he has nothing to hide. In this situation, counsel's intrusion may force disagreements and confusion which would undermine the picture the accused wishes to present.

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."

*Faretta v. California*, 422 U.S. 806, 834, 95 S.Ct. 2525, 2540, 45 L.Ed.2d 562, 581 (1975).

**17.** *See* notes 4 and 8 *supra*.

That a trial court may appoint standby counsel even over the objections of an unwilling defendant is without question. This was expressly recognized in *Faretta v. California*, 422 U.S. 806, 834 n.46, 95 S.Ct. 2525, 2541 n.46, 45 L.Ed.2d 562, 581 n.46 (1975).

The presence of standby counsel allows a trial judge to retain an impartial role since the defendant may instead turn to his court-appointed attorney for assistance when troubled by legal matters. Should the *pro se* defendant lose his self-representation right—for example, by obstructionist misconduct—standby counsel can step in and the trial can continue uninterrupted, thereby conserving judicial resources. The same may be said for the situation where defendant chooses to abandon the right.

appointed standby counsel.[18] It is an issue not presented in *Faretta*, but one clearly raised by it.

Since *Faretta*, the Supreme Court has shed little light on how many of the procedural difficulties resulting from that decision[19] should be resolved.[20] Nor has there been a case, Supreme Court or otherwise, in which a court has been squarely presented with the question of defining the role of standby counsel.[21] However, notwithstand-

18. This decision pertains only to those situations in which a defendant has elected to proceed *pro se*, but the court, in its discretion, has appointed standby counsel. What is not currently before us is the situation where, under State law, a defendant may elect to go to trial and conduct his own defense *together* with counsel. *See Faretta v. California*, 422 U.S. 806, 813 n.10, 95 S.Ct. 2525, 2530 n.10, 45 L.Ed.2d 562, 569 n.10 (1975).

19. In the conclusion to his dissent, Justice Blackmun ominously warned that

Although the Court indicates that a pro se defendant necessarily waives any claim he might otherwise make of ineffective assistance of counsel, ante, at 835 n.46, 45 L.Ed.2d 581, the opinion leaves open a host of other procedural questions. Must every defendant be advised of his right to proceed pro se? If so, when must that notice be given? Since the right to assistance of counsel and the right to self-representation are mutually exclusive, how is the waiver of each right to be measured? If a defendant has elected to exercise his right to proceed pro se, does he still have a constitutional right to assistance of standby counsel? How soon in the criminal proceeding must a defendant decide between proceeding by counsel or pro se? Must he be allowed to switch in midtrial? May a violation of the right to self-representation ever be harmless error? Must the trial court treat the pro se defendant differently than it would professional counsel? I assume that many of these questions will be answered with finality in due course. Many of them, however, such as the standards of waiver and the treatment of the pro se defendant, will haunt the trial of every defendant who elects to exercise his right to self-representation. The procedural problems spawned by an absolute right to self-representation will far outweigh whatever tactical advantage the defendant may feel he has gained by electing to represent himself.

*Faretta v. California*, 422 U.S. 806, 852, 95 S.Ct. 2525, 2549, 45 L.Ed.2d 562, 591–92 (1975).

20. In the seven years since its release, the Supreme Court has referred to *Faretta* only ten times, mostly in a cursory fashion. *Edwards v. Arizona*, 451 U.S. 477, 482, 489, 101 S.Ct. 1880, 1883, 1887, 68 L.Ed.2d 378, 384, 389 (1981); *Lenhard v. Wolff*, 444 U.S. 807, 808, 100 S.Ct. 29, 62 L.Ed.2d 20 (1979); *Gannett Co., Inc. v. De Pasquale*, 443 U.S. 368, 380, 417, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608, 621 (1979); *United States v. Grayson*, 438 U.S. 41, 56, 98 S.Ct.

2610, 2618, 57 L.Ed.2d 582, 593 (1978); *Bates v. State Bar of Arizona*, 433 U.S. 350, 382, 97 S.Ct. 2691, 2708, 53 L.Ed.2d 810, 834 (1977); *Brewer v. Williams*, 430 U.S. 387, 419, 97 S.Ct. 1232, 1249, 51 L.Ed.2d 424, 449 (1977); *North v. Russell*, 427 U.S. 328, 343, 96 S.Ct. 2709, 2716, 49 L.Ed.2d 534, 544 (1976); *Estelle v. Williams*, 425 U.S. 501, 522, 96 S.Ct. 1691, 1701, 48 L.Ed.2d 126, 141 (1976); *Michigan v. Mosley*, 423 U.S. 96, 109, 96 S.Ct. 321, 329, 46 L.Ed.2d 313, 324 (1975); and *Herring v. New York*, 422 U.S. 853, 864, 866, 95 S.Ct. 2550, 2557, 45 L.Ed.2d 593, 602 (1975).

21. A pre-*Faretta* case has stated in dicta, however, that "[a]lthough it is not error for the court to require counsel to be present and prepared to give advice, such counsel may not interfere with the defendant's presentation of the case and may give advice only upon request." *United States v. Price*, 474 F.2d 1223, 1227 (9th Cir. 1973). *See also United States v. Pomeroy*, 485 F.2d 272, 275 (9th Cir. 1973), *cert. denied*, 415 U.S. 981, 94 S.Ct. 1571, 39 L.Ed.2d 877 (1974).

A more active role for the attorney appears to be suggested by Standard 6–3.7 of the ABA Standards of Criminal Justice, The Trial Judge's Function (2nd ed. 1980):

When a defendant has been permitted to proceed without the assistance of counsel, the trial judge should consider the appointment of standby counsel to assist the defendant when called upon and to call the judge's attention to matters favorable to the accused upon which the judge should rule on his or her motion. Standby counsel should always be appointed in cases expected to be long or complicated or in which there are multiple defendants.

The Comments section to that standard, however, states that "the court should ordinarily appoint standby counsel *to assist the accused if and when called upon* ..." (emphasis added).

*See also* Uniform Rules of Criminal Procedure 711, in which it was stated that

Notwithstanding acceptance of a waiver the court may appoint standby counsel to assist when called upon by the defendant, to call the court's attention to matters favorable to the defendant upon which the court should rule upon its own motion, and, should it become necessary for a fair trial, to conduct the defense.

The Comments section further stated that:

As long as the standby counsel only assists when called upon by the defendant and calls

ing the paucity of authority on the subject, *Faretta* itself offers some guidelines.

The essence of *Faretta* was succinctly stated:

The Sixth Amendment does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense. . . . The right to defend is given directly to the accused; for it is he who suffers the consequences if the defense fails.

The counsel provision supplements this design. It speaks of the "assistance" of counsel, and an assistant, however expert, is still an assistant. The language and spirit of the Sixth Amendment contemplate that counsel, like the other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant. . . . To thrust counsel upon the accused, against his considered wish, thus violates the logic of the Amendment. In such a case, counsel is not an assistant, but a master; and the right to make a defense is stripped of the personal character upon which the Amendment insists. . . . An unwanted counsel "represents" the defendant only through a tenuous and unacceptable legal fiction. Unless the accused has acquiesced in such representation, the defense presented is not the defense guaranteed him by the Constitution, for, in a very real sense, it is not *his* defense.

*Faretta v. California*, 422 U.S. 820–21, 95 S.Ct. 2533–34.

the court's attention to matters favorable to the defendant upon which the court should rule upon its own motion, as provided by the ABA Standard, there is no interference with the defendant's representing himself.

22. *Faretta v. California*, 422 U.S. 806, 835 n.46, 95 S.Ct. 2525, 2541 n.46, 45 L.Ed.2d 562, 581 n.46 (1975). *See also Mayberry v. Pennsylvania*, 400 U.S. 455, 466, 91 S.Ct. 499, 505, 27 L.Ed.2d 532, 540 (1971) (Burger, C. J., concurring).

23. His role, of course, will broaden should defendant lose his right to conduct his own defense, either through abandonment or forfeiture. *See* note 17 *supra*.

██ Court-appointed counsel was never meant to be an albatross tied around a defendant's neck. Instead, he was intended to be a means through which a defendant, ignorant of the intricate mechanics of the law, could effectively present his defense. *See Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158, 170 (1932). But like any other tool, he may be used or not used. Here, Wiggins chose to conduct his own defense; this much was constitutionally guaranteed under *Faretta*. He also wished to dispose of the court-appointed standby counsel, but the trial court refused. Under *Faretta*, this matter was within the court's discretion.[22] But while the presence of standby counsel may be forced on a defendant, his aid may not. His function is "to aid the accused *if and when the accused requests help*. . . ." *Faretta v. California*, 422 U.S. at 835 n.46, 95 S.Ct. at 2541. Anything more would prevent the *pro se* defendant from conducting *his* defense. Therefore, the rule that we establish today is that court-appointed standby counsel is "to be seen, but not heard." By this we mean that he is not to compete with the defendant or supersede his defense. Rather, his presence is there for advisory purposes only,[23] to be used or not used as the defendant sees fit.[24]

**B**

The more difficult question on this appeal was posed by Justice Blackmun in his dissent to *Faretta*: "May a violation of the right to self-representation ever be harmless error?"[25] Perhaps the best authority

24. While not before us, we are conscious of the fact that in the interests of justice, the court or standby counsel may wish to draw the defendant's attention to some legal aspect of which he may be painfully unaware. In such instances the court, either on its own or after being asked by standby counsel, may *request* that the accused confer with counsel, but the defendant may elect not to do so.

25. *Faretta v. California*, 422 U.S. 806, 852, 95 S.Ct. 2525, 2549, 45 L.Ed.2d 562, 592 (1975). For other procedural questions left open by *Faretta*, see note 19 *supra*.

for the proposition that a denial of the right to conduct one's own defense will always be reversible error is *Faretta* itself. Nowhere in the case is there any indication that the defendant was prejudiced by the rejection of his *pro se* request, that his state-appointed attorney did not conduct an able defense, or that there were any statutory or constitutional grounds for reversal other than the trial court's denial of Faretta's right of self-representation. The case is clearly one in which an otherwise "harmless" denial of a constitutional right is itself sufficient grounds for reversal.[26]

 Not every violation of a constitutional right, however, requires an automatic reversal of a conviction regardless of the facts and circumstances. As the Supreme Court stated in *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969): "although 'there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error', not all 'trial errors which violate the Constitution automatically call for reversal.'" 395 U.S. at 251, 89 S.Ct. at 1727 (quoting *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 710 (1967)). *Faretta* is distinguishable. There the defendant's right to proceed *pro se* had been completely denied. Wiggins, on the other hand, had been granted that right. It had, however, been interfered with. Under these limited circumstances, there is a need for a harmless error rule. Were there none, a reversal would be mandated every time overzealous counsel, acting in the best interests of his client, volunteered his aid without prior permission. This would be true even though the interjections were few and innocuous. Moreover, an automatic reversal rule would give unscrupulous counsel *carte blanche* to sandbag the prosecution. All that would be necessary to secure a new trial for a defendant whose conviction is a foregone conclusion would be for counsel to throw himself into the fray. Such results were not meant to be. Some flexibility is necessary, and the harmless error rule is the vehicle that takes us there.

 Notwithstanding our adoption of such a rule for cases like the present one, the result below must still be reversed. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705, 710–11 (1967). The burden is a heavy one, and it rests on the government. In order to make such a determination, an examination of the record as a whole is necessary; passages are to be examined in context, and evaluated in light of their affect on the total mix.[27]

 A review of the record in the case at hand reveals that the government has failed its task of demonstrating that counsel's participation was harmless. As indicated earlier, counsel continuously objected, and on several occasions moved for mistrial, despite defendant's repeated requests that he play a more passive role. They were in constant disagreement over basic trial strategy, and at one point counsel cursed in

---

26. In *Chapman v. United States*, 553 F.2d 886, 891–92 (5th Cir. 1977), this Court held that the denial of the right to self-representation can never be considered harmless in the sense that an error that has no effect on the outcome of the case is considered harmless. *See also Scott v. Wainwright*, 617 F.2d 99, 104 (5th Cir. 1980), *cert. denied*, 449 U.S. 885, 101 S.Ct. 240, 66 L.Ed.2d 111 (1980); and *United States v. Dougherty*, 473 F.2d 1113, 1127–30 (D.C.Cir. 1972). The *Chapman* decision did leave room, however, for a finding of harmless error if the defendant was "afforded a genuine opportunity to help conduct his defense." 553 F.2d at 891 n.9.

27. While interjections made in the presence of the jury are inherently prejudicial, and are therefore subject to strict scrutiny, statements made outside their presence are not to be discounted. Conceivably, a defendant could become so frustrated or flustered by standby counsel's interference as to be unable to regain his composure by the time the jury returned. Colloquies such as that set forth in note 10 *supra* would warrant further consideration. In addition, it is also important to note that trial strategy and the image defendant wishes to project to the jury are not the only reasons why a defendant may wish to proceed *pro se*. *See* note 16 *supra*.

front of the jury. We fail to perceive how such conduct could have anything but a negative impact on the jury. It also destroyed Wiggins' own perception that he was conducting *his* defense.

### C

One final point to address is the question of Wiggins' acquiescence. The government argues that more often than not, defendant approved standby counsel's participation or failed to register any protest when counsel acted in his behalf. Acquiescence, however, is not the only possible explanation for defendant's conduct. Early in the proceedings, the trial court let it be known that it *was not going to order* standby counsel not to participate.[28] More likely than not, Wiggins interpreted this statement to mean that continuous objections would be unproductive. Also to be considered is the fact that confrontation, in the presence of the jury, would only help to destroy the image defendant wished to convey to the jury.

 All of the above, however, is speculation. Moreover, it is unnecessary in light of this opinion's definition of the role of standby counsel. Once the right of self-representation has been asserted there will be no question of acquiescence unless counsel's participation has been overtly encour-

aged by the defendant. Such action has not taken place here.[29]

REVERSED and REMANDED for the granting of the writ of habeas corpus and the entry of an appropriate judgment.

---

28. *See* note 8 *supra.*

29. Wiggins authored a brief statement which he requested his court-appointed attorney on appeal to read to this Court. In light of the fact that this opinion focuses on a defendant's right to proceed *pro se*, it is appropriate that it be included here:

> The Supreme Court, and this Court before the Supreme Court, determined that the defendant has a constitutional right to defend himself without counsel if and when he elects to do so. This is solidly established. And the trial court may, even over the defendant's objection, appoint a standby counsel for consultation or advisement. This much is held by *Faretta.* Or in the event that the defendant's conduct becomes disruptive, to be available to take over the defense if that becomes necessary. But when standby counsel abandons his designated assignment, and proceeds to participate in the trial against the defendant's wishes, and over his objection, just how much participation by unwanted

counsel is to be allowed? Where does there exist any markers to limit active participation of an aggressive lawyer that a defendant on trial wants no part of at all? If such active, unwanted, and unsolicited participation of standby counsel as this case presents is approved by the Court, would not this then open the doors for future cases that would provide for trial judges to make subjective and possibly inequitable determinations from case to case allowing or not allowing designated standby counsel to participate in varying degrees even over the objections of *pro se* defendants? If this becomes practice, where would the counsel participation line be drawn? If this becomes practice, it could be not said [sic] that such a defendant would have standing to complain of the effectiveness or ineffectiveness of counsel actively participating in trial against his [the defendant's] will. If this became practice, eventually the constitutional right we're talking about would surely become meaningless.