THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MASON WILLIAMS, Defendant-Appellant.

Fourth District   No. 4—94—0633

Opinion filed February 23, 1996.—Rehearing denied March 20, 1996.

1054

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Perry Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 1994, a jury convicted defendant, Mason Williams, of two counts of aggravated battery on a correctional officer (720 ILCS 5/12—4(b)(6) (West 1992)), and the trial court later sentenced him to 10 years in prison on each conviction, with the sentences to run concurrently. Defendant appeals, arguing that (1) the trial court (a) failed to adequately admonish him regarding waiver of his right to counsel and self-representation, (b) abused its discretion by denying his request for the appointment of standby counsel, and (c) erroneously admitted certain testimony; and (2) the prosecutor's improper closing argument deprived him of a fair trial. We affirm.

## I. BACKGROUND

In October 1993, an indictment charged defendant with two counts of aggravated battery on a correctional officer. In November 1993, defendant, an inmate at Pontiac Correctional Center, appeared in the trial court for the first time on that indictment, and the court asked defendant if he knew "what [his] situation [was] as far as counsel?" Defendant responded, "[d]o I want counsel[?] I would be objecting. I would waive my right to counsel at this particular time. And I would aver to represent myself *pro se* pursuant to the Sixth Amendment of the United States Constitution." The court then admonished him regarding what would be required of him if he proceeded *pro se*, as well as the potential consequences of his doing so. The court found that defendant knowingly and voluntarily waived his right to counsel and granted his request to proceed *pro se*. In January 1994, during a pretrial hearing, defendant reaffirmed his desire to represent himself.

At the May 1994 trial, several correctional officers testified that defendant struck an officer on the back of the head, requiring five stitches. After the State rested, defendant recalled three officers as defense witnesses. The jury returned verdicts finding defendant guilty of aggravated battery.

## II. WAIVER OF RIGHT TO COUNSEL

■ Defendant first argues that he did not intelligently and knowingly waive his right to counsel because the trial court failed to adequately admonish him regarding the perils of proceeding *pro se*. Citing *People v. Ward* (1991), 208 Ill. App. 3d 1073, 567 N.E.2d 642, defendant specifically contends that the court erred by failing to inform him that it would not appoint standby counsel. We disagree.

In *People v. Baker* (1982), 92 Ill. 2d 85, 91, 440 N.E.2d 856, 859, the supreme court addressed the issue of a defendant's right to appear *pro se* and wrote the following:

"[A] defendant may competently waive counsel if such an election is voluntary and constitutes 'a knowing and intelligent relinquishment or abandonment of a known right or privilege.' *Edwards v. Arizona* (1981), 451 U.S. 477, 482, 68 L. Ed. 2d 378, 385, 101 S. Ct. 1880, 1883; *Johnson v. Zerbst* (1938), 304 U.S. 458, 464, 82 L. Ed. 1461, 1466, 58 S. Ct. 1019, 1023; *People v. Johnson* (1979), 75 Ill. 2d 180, 187[, 387 N.E.2d 688, 691]."

In *People v. Lego* (1995), 168 Ill. 2d 561, 563-65, the supreme court expanded upon its decision in *Baker*, as follows:

"Although a court may consider a defendant's decision to represent himself unwise, if his decision is freely, knowingly, and intelligently made, it must be accepted out of ' "that respect for the individual which is the lifeblood of the law." ' [Citation.] *** [A defendant] should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that ' "he knows what he is doing and his choice is made with eyes open." ' [Citation.] *** The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances of that case, including the background, experience, and conduct of the accused."

In *Ward*, this court addressed the issue of a defendant's right to represent himself and wrote the following:

"To ensure that a defendant's request for self-representation is an intelligent and knowing waiver of his right to counsel, *** it would be *desirable* for a trial court to inform defendant of the following matters:

(1) presenting a defense is not a simple matter of telling one's story, but requires adherence to various technical rules governing the conduct of a trial;

(2) a lawyer has substantial experience and training in trial procedure and the prosecution will be represented by an experienced attorney;

(3) a person unfamiliar with legal procedures (a) may allow the prosecutor an advantage by failing to make objections to inadmissible evidence, (b) may not make effective usage of such rights as the *voir dire* of jurors, and (c) may make tactical decisions that produce unintended consequences;

(4) the defendant proceeding *pro se* will not be allowed to complain on appeal about the competency of his representation;

(5) the effectiveness of his defense may well be diminished by his dual role as attorney and accused;

(6) defendant will receive no special consideration from the court;

(7) defendant will receive no extra time for preparation or greater library time (if in prison);

(8) a lawyer can render important assistance (a) by determining the existence of possible defenses to the charges against defendant, (b) through consultations with the prosecutor regarding possible reduced charges or lesser penalties, and (c) in the event of a conviction, by presenting to the court matters which might lead to a lesser sentence;

(9) in the event the court accepts defendant's decision to represent himself, defendant will not be given an opportunity to change his mind during trial; and

(10) *if the court in its discretion is not going to appoint standby counsel, to specifically inform the defendant that there will be no standby counsel to assist him at any stage during trial.*" (Emphasis added.) *Ward*, 208 Ill. App. 3d at 1081-82, 567 N.E.2d at 647-48.

This court in *Ward* did not set forth this list as a directive for trial courts, but, rather, as matters about which it would be *desirable* for a trial court to inform defendant. These matters do *not* constitute a prescribed litany of admonitions, requiring reversal if the court fails to mention any of them.

In Supreme Court Rule 401 (134 Ill. 2d R. 401), the supreme court has codified the admonitions the trial court must give to a defendant who wishes to waive counsel and proceed *pro se*, and this court's decision in *Ward* did not—and could not—amend that rule to require additional admonitions. Instead, the *suggested* admonitions in *Ward* were designed both to point out to the defendant the problems he will likely face if he proceeds *pro se* and to assist the court in determining whether the defendant has, in fact, knowingly and intelligently waived his right to counsel. Obviously, the more a defendant knows of these problems, the more informed will be his ultimate decision to waive counsel.

In the present case, defendant does not argue that the trial court failed to properly admonish him in accordance with Rule 401; nor does he argue that he did not knowingly and intelligently waive his right to counsel *based on the admonitions he actually received.* Instead, defendant argues that if the trial court had *additionally* admonished him in the fashion suggested by *Ward*—particularly pointing out that the court was not going to appoint standby counsel—then he might not have waived counsel. Defendant

concludes that the *Ward* admonitions are necessary in order for the trial court—or this court—to conclude that he knowingly and intelligently waived his right to counsel.

For the reasons already discussed, we reject defendant's analysis and hold that noncompliance with the *Ward* suggestions is not grounds for reversal of an otherwise valid waiver of counsel. However, we adhere to the suggestions made in *Ward* and note that had the trial court here fully utilized them, the issues now before us could have been avoided. Further, given that a defendant's decision to represent himself is universally viewed as unwise, full communication of all the *Ward* admonitions might have the additional benefit of discouraging a defendant from taking this unwise step, resulting in both more effective representation for him and smoother, less difficult courtroom proceedings for the court.

We also conclude that the trial court did not err by not telling defendant what action it might take regarding standby counsel because when defendant waived his right to counsel—at an early stage in these proceedings—the court may not yet have decided what action it would take. The court has broad discretion in deciding whether to appoint standby counsel (*People v. Redmond* (1994), 265 Ill. App. 3d 292, 304, 637 N.E.2d 526, 536, citing *People v. Partee* (1987), 157 Ill. App. 3d 231, 247, 511 N.E.2d 1165, 1176), and we will not force the trial court to exercise its discretion before the court believes the time to do so has arrived.

### III. REQUEST FOR STANDBY COUNSEL

■ Defendant next argues that the trial court abused its discretion by denying his request for the appointment of standby counsel, particularly in view of his difficulty subpoenaing witnesses. We disagree.

A trial court may appoint standby counsel despite a defendant's decision to proceed *pro se*, but a defendant who chooses to represent himself must be prepared to do so. (*People v. Gibson* (1990), 136 Ill. 2d 362, 383, 556 N.E.2d 226, 234-35.) As stated, the trial court has broad discretion in deciding whether to appoint standby counsel. *Redmond*, 265 Ill. App. 3d at 304, 637 N.E.2d at 536.

The supreme court in *Gibson* set forth the following criteria which a court should consider in deciding whether to appoint standby counsel: (1) the nature and gravity of the charge; (2) the expected factual and legal complexity of the proceedings; and (3) the abilities and experience of the defendant. *Gibson*, 136 Ill. 2d at 380, 556 N.E.2d at 233.

■ Here, defendant was charged with aggravated battery, the

factual background of the case was not complex, no scientific or expert testimony was involved, defendant had prior involvement in legal proceedings, and he was, as the court noted, "articulate" and familiar with his case (filing several motions before the court and engaging in discovery). When defendant requested standby counsel on the day of trial, he acknowledged that it was "too late in the game" and that the decision was "left up to [the court's] discretion." Defendant was before the court on three different occasions prior to trial, yet he never requested standby counsel, even though during each of those appearances, the court gave him every opportunity to do so by asking if he was sure he wanted to proceed *pro se*. In our judgment, the trial court did not abuse its discretion when it denied defendant's request for standby counsel.

In fact, we believe the trial court acted wisely by not appointing standby counsel. The appointment of standby counsel frequently creates more problems than it solves and often is viewed by defendants as an important factor in making the decision to proceed *pro se*. Given the problems inherent in a defendant's representing himself, particularly in a serious case, trial courts ought not act as "enablers" for this unwise course of conduct.

Further, because a defendant's right to represent himself has constitutional roots (see *Faretta v. California* (1975), 422 U.S. 806, 818-21, 45 L. Ed. 2d 562, 572-74, 95 S. Ct. 2525, 2532-34), the conduct of standby counsel might inadvertently infringe upon that right. For instance, in *McKaskle v. Wiggins* (1984), 465 U.S. 168, 79 L. Ed. 2d 122, 104 S. Ct. 944, the trial court appointed standby counsel to assist the defendant who had chosen to represent himself at trial. Following his conviction, he obtained *habeas* relief from the Federal circuit court of appeals (*Wiggins v. Estelle* (5th Cir. 1982), 681 F.2d 266) on the ground that his right to self-representation was violated by the unsolicited participation of an overzealous standby counsel. The court explained as follows:

> "[T]he rule that we establish today is that court-appointed standby counsel is 'to be seen, but not heard.' By this we mean that he is not to compete with the defendant or supersede his defense. Rather, his presence is there for advisory purposes only, to be used or not used as the defendant sees fit." *Wiggins*, 681 F.2d at 273.

The United States Supreme Court reversed, explaining that standby counsel does not abuse a defendant's *Faretta* rights

> "[i]n overcoming routine procedural or evidentiary obstacles to the completion of some specific task, such as introducing evidence or objecting to testimony, that the defendant has clearly shown he

wishes to complete. Nor are they infringed when counsel merely helps to ensure the defendant's compliance with basic rules of courtroom protocol and procedure." *McKaskle*, 465 U.S. at 183, 79 L. Ed. 2d at 136, 104 S. Ct. at 953-54.

However, as the Supreme Court of Illinois noted in *Gibson*, the United States Supreme Court's decision in *McKaskle* did not overrule *Faretta*:

"Consistent with *Faretta*, 'the *pro se* defendant is entitled to preserve actual control over the case he chooses to present to the jury,' and counsel's unsolicited participation 'should not be allowed to destroy the jury's perception that the defendant is representing himself.' " *Gibson*, 136 Ill. 2d at 377-78, 556 N.E.2d at 232, quoting *McKaskle*, 465 U.S. at 178, 79 L. Ed. 2d at 133, 104 S. Ct. at 951.

A careful reading of *McKaskle* and *Gibson* demonstrates that (1) no "bright line" exists regarding the role of standby counsel, and (2) appointing standby counsel provides a convicted *pro se* defendant the opportunity to argue on appeal that standby counsel either violated the defendant's *Faretta* right to proceed *pro se* or otherwise acted improperly. Examples of cases, other than *McKaskle*, where such arguments have been made (albeit unsuccessfully) are the following: *People v. Tuler* (1994), 258 Ill. App. 3d 775, 630 N.E.2d 1287 (defendant complained that his standby counsel was not properly prepared, resulting in bad advice to defendant); *People v. Meeks* (1993), 249 Ill. App. 3d 152, 618 N.E.2d 1000 (defendant attempted to manipulate the proceedings by frequent changes of mind regarding the role of his standby counsel); and *People v. Williams* (1989), 185 Ill. App. 3d 840, 541 N.E.2d 1175 (defendant claimed that standby counsel interfered with defendant's preparation for trial).

While trial courts may think they risk reversal if they exercise their discretion not to appoint standby counsel, these cases show the opposite is true: the decision to appoint standby counsel puts any resulting conviction at risk because of the ambiguity of counsel's role. Further, trial courts should be mindful that a defendant might claim that standby counsel improperly interfered with the defendant's preparation for—or presentation at—trial based upon conversations that, by definition, the court was not and could not be privy to. This means that those trial courts which are sensitive to the *McKaskle* problem and which exercise control over the courtroom proceedings to ensure that standby counsel does not overstep his bounds (whatever they may be) still are at the mercy of counsel for actions counsel may take out of the court's presence.

We note that even though none of the Illinois defendants in the

above-mentioned cases who complained about the role of their standby counsels was successful, other defendants have succeeded in making this claim, most notably the defendant in *McKaskle*, who obtained *habeas* relief from the Fifth Circuit Court of Appeals. Further, even though the Supreme Court reversed the fifth circuit, three justices dissented, agreeing with the fifth circuit's view that standby counsel "is 'to be seen, but not heard'" (*McKaskle*, 465 U.S. at 191, 79 L. Ed. 2d at 141, 104 S. Ct. at 958 (White, J., dissenting), quoting *Wiggins*, 681 F.2d at 273), and a fourth justice merely concurred in the result (*McKaskle*, 465 U.S. at 188, 79 L. Ed. 2d at 139, 104 S. Ct. at 956 (Blackmun, J., concurring in the result)). An additional problem with appointing standby counsel is that if a defendant's *Faretta* rights are violated, that violation on appeal *cannot* be viewed as harmless error; instead, reversal must occur no matter how strong the State's case may have been. *McKaskle*, 465 U.S. at 177 n.8, 79 L. Ed. 2d at 133 n.8, 104 S. Ct. at 950 n.8.

In contrast, *no* trial court in Illinois has been reversed for exercising its discretion to *not* appoint standby counsel, and this absence of reversals appears consistent with nationwide experience. (*Harris v. State* (1995), 107 Md. App. 399, 413, 668 A.2d 938, 945 ("Most courts make clear that, because it is a discretionary call, the refusal to appoint standby counsel is not error"); 2 W. LaFave & J. Israel, Criminal Procedure § 11.5, at 17 n.7.3 (Supp. 1991) ("[I]t *** is the general rule that the trial court has no obligation to honor a request for appointment of standby counsel, and its failure to do so generally will not be reexamined by the appellate courts").) Further, our research reveals that this issue rarely arises on appeal. It did arise in *Redmond* (265 Ill. App. 3d at 304, 637 N.E.2d at 536), but the appellate court rejected the defendant's claim that he was prejudiced when the trial court refused to appoint standby counsel and noted as follows: "[T]he Illinois Supreme Court has yet to hold that the trial judge's failure to exercise his discretion, without more, necessarily requires reversal."

We further note that *Gibson* was a death penalty case, which we suggest explains many of the concerns the supreme court expressed therein about the desirability of standby counsel for that *pro se* defendant. In our judgment, consistent with the views expressed by the supreme court in *Gibson*, the trial court's prudent course in most cases is not to appoint standby counsel, even if the *pro se* defendant specifically requests that appointment. We find support for this position in the following observations from the Maryland Court of Special Appeals:

"Almost every court that has addressed [the] issue [of appoint-

ing standby counsel], from the Supreme Court down, has expressed some concern over the practical implications of having standby counsel, and, indeed, there are real potential problems. The *McKaskle* Court noted one of them—overparticipation by counsel, thereby impinging upon both the reality and the appearance of self-representation. There is also the significant problem of confidentiality—how much attaches and to what does it attach— not to mention the extent to which standby counsel is obliged to blindly do the defendant's bidding and the extent to which the defendant may later assert a claim for post conviction relief based on poor advice or the omission to give advice or perform some service." *Harris*, 107 Md. App. at 419, 668 A.2d at 948.

## IV. THE PROSECUTOR'S CLOSING ARGUMENT

■ Defendant next argues that the prosecutor made several improper remarks during closing argument that deprived him of a fair trial. A prosecutor "is given great leeway in closing argument" (*People v. Simms* (1995), 168 Ill. 2d 176, 197), and while "there are limits to proper argument, *** forcefully arguing that the State has proven its case is not, in itself, improper." (*Simms*, 168 Ill. 2d at 196-97.) Further, remarks made in closing argument will not merit reversal unless they result in substantial prejudice to the defendant. *People v. Peeples* (1993), 155 Ill. 2d 422, 482, 616 N.E.2d 294, 322.

Defendant first claims that the prosecutor improperly argued that defendant had kept unfavorable evidence from the jury because of the rules of evidence. However, because defendant failed to object to the argument when made, he has waived this issue on appeal. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130; *People v. Turner* (1993), 241 Ill. App. 3d 236, 242, 608 N.E.2d 906, 911.) This court may review an alleged error not properly preserved where "the evidence is closely balanced or the error is of such magnitude that the defendant has been denied a fair trial." (*People v. Cloutier* (1993), 156 Ill. 2d 483, 507, 622 N.E.2d 774, 786.) Because the evidence of defendant's guilt in this case was not closely balanced— indeed, it was overwhelming—the complained-of testimony could not have affected the fairness of defendant's trial. We therefore decline to review this issue as plain error.

■ Defendant next argues that during rebuttal, the prosecutor improperly commented regarding both defendant's failure to testify and his prior conviction, and attempted to shift the burden of proof. In context, the prosecutor argued as follows:

"Whose story is incredible? Whose story fell apart. [The defendant's] story was incredible, inconsistent and fell apart. ***

[The defendant] also stated that no one acts without a motive,

why would I do it, no reason, etc., I was acting in self-defense. That is why we are here today, because he acted without a motive, he acted with no reasonable explanation. ***

*** He hit Kevin DeLong and cut him twice. He hit David Booker in the back of the [head]. He has committed the offenses. *** What [the defendant] is asking you to do is to say simply that, well I have heard nothing from the defense, so all I am going to do is say that five correctional officers are liars. [Defendant objected and the court sustained the objection.] ***

The officers that testified Monday have a very dangerous, difficult and unpredictable job. Let's not forget a couple of things. This is the north segregation unit of the Pontiac Correctional Center, a maximum security prison. And the fact that these officers carried out their job under such control, under such organization with the proper amount of officers and with the minimum amount of force is commendable. And the fact that Kevin DeLong got hit in the head for no reason at all, got scratched on the neck for no reason at all, and the fact that [the defendant] was swinging wildly, hitting David Booker in the back of the head and striking the other officers is conduct that deserves some sort of action here. ***

And I am confident that the 12 of you will take that action today and show [the defendant] that, yes, you committed a crime before, that is why you are in the Pontiac Correctional Center. [Defendant objected and the court sustained the objection.] ***

*** I am confident that the 12 of you will take this action today [to convict] to show [the defendant] that just because you come in here and call officers liars and make up stories and present no defense, even though that is your right— ***

[The defendant] is presumed innocent until and unless after hearing all the evidence in the case you are convinced beyond a reasonable doubt that [the defendant] committed the offenses. And I submit to you that after hearing all the evidence even though he began with the presumption of innocence, that after hearing all of it, he has been proven to you guilty beyond a reasonable doubt guilty of all four counts of aggravated battery."

We note that the trial court sustained defendant's objection to the initial allegedly improper remark, and by doing so diminished the effect of the remark's impropriety. (See *People v. Coleman* (1994), 158 Ill. 2d 319, 357, 633 N.E.2d 654, 673.) In context, the prosecutor's comments, although inartfully phrased, could have been understood by the jury not as comments on defendant's failure to testify in his own behalf, but as emphasis on the uncontroverted evidence. (See *People v. Govin* (1991), 213 Ill. App. 3d 928, 937, 572 N.E.2d 450, 456.)

However, even assuming error, we conclude that the prosecutor's remarks did not result in any substantial prejudice such that, absent the remarks, the result of the trial would have been different. See *Coleman*, 158 Ill. 2d at 348-49, 633 N.E.2d at 669.

■ Defendant next claims that the prosecutor improperly argued that the jury should consider his propensity to commit crimes when the prosecutor remarked that defendant had previously committed a crime. We note that (1) defendant first argued to the jury that he was a convicted felon, and (2) the trial court sustained defendant's objection to the allegedly improper remark, and thus diminished the effect of the remark's impropriety. (See *Coleman*, 158 Ill. 2d at 357, 633 N.E.2d at 673.) Given that defendant allegedly committed these crimes while an inmate at a maximum security prison, we find no prejudice in the prosecutor's reference to defendant's being a convicted felon.

■ Defendant also argues that the prosecutor's remarks regarding defendant's presumption of innocence distorted the burden of proof. Although we disagree with this characterization, we need not reach the issue on the merits because defendant failed to object to the argument when made. Accordingly, he has waived this issue on appeal. *Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; *Turner*, 241 Ill. App. 3d at 242, 608 N.E.2d at 911.

## V. TRIAL COURT'S ADMISSION OF TESTIMONY REGARDING DEFENDANT'S LITIGATION AGAINST CORRECTIONAL OFFICERS AND STATE'S ATTORNEY'S OFFICE

■ Last, defendant argues that the trial court erred by allowing allegedly prejudicial testimony concerning his litigation against some of the correctional officers and the State's Attorney's office. Because defendant failed to object to the testimony at trial, he has waived this issue. (*Enoch*, 122 Ill. 2d at 186, 522 N.E.2d at 1130; *Turner*, 241 Ill. App. 3d at 242, 608 N.E.2d at 911.) Further, we decline to review it as plain error because, on the record before us, the complained-of testimony could not have affected the fairness of defendant's trial. See *Cloutier*, 156 Ill. 2d at 507, 622 N.E.2d at 786.

## VI. CONCLUSION

For the reasons stated, we affirm.

Affirmed.

GARMAN and KNECHT, JJ., concur.