NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180100-U

NO. 4-18-0100

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
March 10, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee | ) | Circuit Court of |
| v. | ) | Sangamon County |
| MICHAEL SEAL, | ) | No. 09CF998 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John Madonia, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and DeArmond concurred in the judgment.

**ORDER**

¶ 1  *Held:*  The appellate court affirmed the trial court's denial of defendant's posttrial motion.

¶ 2  In November 2017, a jury found defendant, Michael Seal, guilty of first degree murder, and the trial court later sentenced him to 40 years in prison.  Defendant appeals, arguing only that the trial court failed to conduct (1) a pretrial *Krankel* inquiry and (2) a posttrial *Krankel* inquiry.  See *People v. Krankel*, 102 Ill. 2d 181, 464 N.E.2d 1045 (1984).  We disagree and affirm.

¶ 3                    I. BACKGROUND

¶ 4  In November 2009, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1), (2) (West 2008)).  The November 2017 jury trial at issue in this appeal at which defendant was convicted was his second trial on that charge.  Defendant's first trial was an

August 2012 bench trial at which the trial court found defendant guilty of first degree murder and later sentenced him to 40 years in prison.

¶ 5      Because defendant's arguments on appeal do not involve either the adequacy or the nature of the evidence presented against him at trial, we refer to that evidence only to the extent necessary to put defendant's arguments in the appropriate context.

¶ 6                    A. Defendant's First Trial

¶ 7      After the State charged defendant in November 2009 with first degree murder, the Sangamon County public defender was appointed to represent him.  As the parties prepared for trial, defendant filed *pro se* numerous letters, affidavits, and motions complaining of the representation provided for him by his attorney from the public defender's office.  Part of the difficulty between defendant and his counsel, as counsel explained to the trial court in March 2011, was that defendant wanted counsel to file motions counsel deemed frivolous and counsel refused to file them.

¶ 8      Between February 2011 and March 2012, defendant *pro se* filed many motions complaining about counsel, one of which asserted that his counsel "must abide by the client[']s decision as to how the representation is handled."  In March 2012, defendant *pro se* filed a "motion of ineffective assistance of counsel," which contained numerous complaints about his counsel's representation.

¶ 9      Ultimately, in April 2012, defendant filed a "motion to proceed *pro se*," alleging that he was forced to represent himself because the court had refused to appoint new counsel, co-counsel, or advisory counsel.  In May 2012, the trial court conducted a hearing on defendant's motion, purportedly admonished him pursuant to Illinois Supreme Court Rule 401 (eff. July 1, 1984), and additionally admonished him at length in accordance with the suggestions of this

- 2 -

court in *People v. Williams*, 277 Ill. App. 3d 1053, 1056-57, 661 N.E.2d 1186, 1189 (1996). The court thereafter accepted defendant's waiver of counsel, and in July 2012, defendant waived his right to a trial by jury.

¶ 10        In August 2012, the trial court conducted a bench trial at which defendant did not testify. The court found defendant guilty of first degree murder and appointed counsel to assist defendant with posttrial motions and at sentencing. In July 2013, the court conducted a sentencing hearing and sentenced defendant to 40 years in prison.

¶ 11                    B. Defendant's First Appeal

¶ 12        Defendant appealed his conviction, arguing that his pretrial waiver of counsel was invalid because the trial court did not provide him with the admonitions required by Rule 401 before accepting that waiver. This court agreed with defendant's argument, reversed his conviction, and remanded for a new trial. *People v. Seal*, 2015 IL App (4th) 130775, 38 N.E.3d 642 (*Seal I*). In so concluding, this court noted that in November 2009 defendant (1) first appeared on this charge, (2) was provided with a copy of the charge against him, and (3) was advised of the possible penalties he faced. However, nearly 2½ years after defendant was initially so advised, the trial court did not again admonish him regarding these matters pursuant to Rule 401 when defendant stated he wished to proceed *pro se*. Instead, the court only advised defendant of the problems he would likely face as a *pro se* defendant as this court described them in *Williams*.

¶ 13        The flavor of the trial court proceedings at defendant's first trial was captured in a special concurrence written in *Seal I* by this order's author:

        "Defendant, convicted of first degree murder, gamed the system and got away with it. Although I agree with the majority opinion, I write this special concurrence to emphasize the mistakes the trial court made in this case. I do so in the

- 3 -

hope that this discussion will keep other trial courts from committing the same errors.

The fundamental error the trial court committed was granting credence to defendant's unceasing complaints about his court-appointed lawyers and then changing those lawyers in a predictably vain effort to somehow assuage defendant.

\* \* \*

The trial court's other key error in the handling of this difficult defendant was the court's indulging him with regard to his spurious *pro se* motions. Having once explained to defendant that there was no such thing as hybrid representation and that he could either have the services of court-appointed counsel or represent himself, the court (at a hearing with defendant present) should have routinely stricken all *pro se* motions filed by defendant that his counsel did not adopt and pursue. The court was under no obligation to consider any of these motions and erred by doing so." *Seal I*, ¶¶ 38-39, 47 (Steigmann, J., specially concurring).

¶ 14                                C. Defendant's Second Trial

¶ 15        On remand, the trial court granted defendant's request to be represented by court-appointed counsel and again appointed the Sangamon County public defender to represent defendant. Defendant again began to file *pro se* various motions, including one that complained it was prejudicial and a "conflict of interest" to force him to accept as counsel an attorney that defendant had previously fired. He also complained about that attorney's failure to raise certain factual issues.

¶ 16        Months later, defendant's counsel indicated that defendant had a change of heart

and was then consenting to his representation. However, after defendant's counsel informed the court that due to his caseload with respect to other clients charged with murder, he would not be able to proceed with defendant's case for at least five months, defendant then stated he wished to proceed *pro se*. Ultimately, the trial court granted defendant's request to represent himself, and this time the court correctly admonished defendant pursuant to Rule 401.

¶ 17 At defendant's October 2017 jury trial, the State presented essentially the same evidence that it presented at defendant's first trial, and the jury convicted defendant of first degree murder.

¶ 18 Defendant *pro se* filed several posttrial motions, and in some of them, he complained about his court-appointed counsel at his original trial (before he elected to proceed *pro se* in that proceeding). At the hearing on defendant's posttrial motions, the trial court did not ask him any questions about his complaints about his trial counsel from his first trial and later sentenced him again to 40 years in prison.

¶ 19 This appeal followed.

¶ 20 II. ANALYSIS

¶ 21 On appeal, defendant argues only that the trial court failed to a conduct (1) a pretrial *Krankel* inquiry and (2) a posttrial *Krankel* inquiry. For the reasons that follow, we reject both of these contentions and affirm.

¶ 22 A. Defendant's Claim That The Trial Court Failed To
Conduct a Pretrial *Krankel* Inquiry

¶ 23 Defendant first argues that the trial court failed to conduct a pretrial *Krankel* hearing. Defendant bases this claim upon his contention that on remand for a new trial, defendant asserted (1) he had a "potential conflict of interest" with the assistant public defender who was representing him and (2) the trial judge, who did not preside over his first trial, therefore should

have conducted a limited inquiry into the nature of any possible conflict by questioning defendant or his counsel or both.  Defendant asserts the following in support of his contention:

> "While [defendant] eventually elected to forego counsel and proceed *pro se*, the record demonstrates that he felt he was forced to do so.  [Defendant] expressed that he wanted the assistance of counsel, but he did not believe that [his court-appointed counsel] had his best interests in mind because he had previously fired him."

We conclude that defendant's claims are totally without merit.

¶ 24        The first problem with defendant's claim is that it violates the holding of *People v. Ayres*, 2017 IL 120071, ¶ 22, 88 N.E.3d 732, in which the Illinois Supreme Court recently had occasion to address when a *Krankel* hearing should be held and wrote the following:  "The State argues a claim of ineffective assistance in *any* communication to the court would necessitate an inquiry and, thus, a circuit court would be required to 'minutely scrutinize' every *pro se* filing for such a complaint.  We disagree.  *Krankel* is limited to posttrial motions."  (Emphasis in original.)

¶ 25        Defendant's rather weak response to this holding by the Illinois Supreme Court is to argue that the above quote "was *dicta*."  We find that contention singularly unpersuasive given that the Illinois Supreme Court has *always* described the need for a *Krankel* hearing as occurring when a defendant raises a question *posttrial* as to whether his trial counsel was ineffective; that court has never held that a *Krankel* hearing was needed or appropriate when, as here, a defendant has raised a pretrial claim of ineffective assistance of counsel.  *Krankel*, 102 Ill. 2d at 189.  See also *People v. Patrick*, 2011 IL 111666, ¶ 32, 960 N.E.2d 1114 ("Following *Krankel*, this court clarified that newly appointed counsel is not automatically required in every case when a defendant presents a *pro se posttrial* motion alleging ineffective assistance of counsel") (emphasis

added)); *People v. Jocko*, 239 Ill. 2d 87, 92, 940 N.E.2d 59, 62 (2010) ("because *Strickland* claims cannot be resolved prior to trial, *Krankel* is inapposite in that context"). Just a few weeks ago, the Illinois Supreme Court reiterated this point in *People v. Roddis*, 2020 IL 124352 ¶ 34, wherein the court wrote the following: "A *pro se posttrial* motion alleging ineffective assistance of counsel is governed by the common-law procedure developed by this court in *Krankel*, [citation] and refined by its progeny." (Emphasis added.)

¶ 26    What makes defendant's claim even more peculiar is that he elected to represent himself at trial, so essentially he is asserting that his claimed problems with his then-court-appointed counsel (before he elected to proceed *pro se*) somehow can now be obliquely resurrected so that he can claim he was forced to proceed *pro se* because of disagreements with that counsel. None of this makes any legal sense, and we reject it all.

¶ 27    B. Defendant's Claim That The Trial Court Failed To
Conduct A Posttrial *Krankel* Inquiry

¶ 28    As meritless as defendant's former argument was, this argument has even less merit, bordering on the bizarre. Defendant's fundamental problem with this claim is that he elected to go to trial *pro se*; thus, his claim that the trial court should have conducted a *Krankel* inquiry—apparently to inquire into his claims of ineffective assistance of the counsel he did not have—simply makes no sense at all.

¶ 29    In this regard, we refer again to the special concurrence that we earlier quoted, noting how the defendant successfully had gamed the system with regard to his initial conviction for first degree murder. With our rejection of his arguments now on appeal, his days of gaming the system are over.

¶ 30    III. CONCLUSION

¶ 31    For the reasons stated, we affirm the trial court's judgment.

¶ 32          Affirmed.